UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-0560 JGB (MBKx)** | Date | February 11, 2026 |
| Title | *Vigen Samvelovich Manukyan v. Kristi Noem, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

**Proceedings:** Order: (1) GRANTING Petitioner's Ex Parte Application for a Temporary Restraining Order (Dkt. No. 2) (IN CHAMBERS)

Before the Court is petitioner Vigen Samvelovich Manukyan's ex parte application for a temporary restraining order. ("Application," Dkt. No. 2.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Application, the Court **GRANTS** the Application.

## I. BACKGROUND

On February 6, 2026, petitioner Vigen Samvelovich Manukyan ("Petitioner") filed a verified petition for writ of habeas corpus. ("Petition," Dkt. No. 1.) Petitioner raises the following grounds for relief: (1) unlawful detention in violation of section 702 of the Administrative Procedure Act ("APA"), for failing to comply with 8 C.F.R. § 241.4 ("Section 241.4")[1]; (2) unlawful potential removal to a third country in violation of 8 U.S.C. § 1231(b)(3);

---

[1] Petitioner alleges Respondents failed to follow their regulations under 8 C.F.R. § 241.4, which is a violation of "the Accardi Doctrine". (Petition at 25.) Petitioner refers to United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), wherein the U.S. Supreme Court held that federal agencies must abide by their own regulations, policies, and procedures. Petitioner contends that the revocation of his OSUP did not comply with applicable regulations. (continued . . . )

and (3) unlawful detention and unlawful potential removal to a third country in violation of the Due Process Clause of the Fifth Amendment. (See Petition.)

That same day, Petitioner filed the instant ex parte application for a temporary restraining order. (Application.) In support of the Application, Petitioner filed a declaration by his counsel, Emily L. Robinson ("Robinson Decl.," Dkt. No. 1-5) and several exhibits relevant to the Application ("Exs. A–K," Dkt. No. 1-5). On the same date, prior to filing the Application, Petitioner's attorney gave notice to counsel for Respondents, Daniel Beck ("Beck"). (Robinson Decl. ¶ 2.) Although Beck represented that his office would oppose the Application (id.), no opposition has been filed as of the date of this Order.

## II. FACTS

Petitioner is a citizen of Russia and a national of the USSR Armenia. (Petition ¶ 17.) Petitioner entered the United States on a J-1 visa and has resided in the United States since June 7, 2005. (See Exhibits A, B, E, and I; Petition ¶ 18.) On December 6, 2005, Petitioner applied for asylum after learning his father had been killed amid ethnic tensions. (Petition ¶¶ 20, 25.) On January 26, 2006, Petitioner's case was referred to the Executive Office for Immigration Review ("EOIR"). (Id. ¶ 25.)

On June 10, 2010, an immigration judge issued an order of removal, and ultimately, Petitioner's appeal was denied by the Ninth Circuit on November 5, 2015. (Petition ¶ 26; Ex. D.) In December 2012, Petitioner was detained, and a redetermination hearing was held in March 2013, wherein an immigration judge found that he was neither a danger to the community nor a flight risk. (Petition ¶ 27, Ex. E.) Accordingly, Petitioner was granted bond and ordered released on March 29, 2013. (Id.) Since 2013, Petitioner has remained on an Order of Supervision ("OSUP"). (Id.)

On January 14, 2026, during a routine ICE check-in, Petitioner was detained. (See Ex. G.) Petitioner was transferred and is currently being detained at Desert View Annex in Adelanto, California. (Petition ¶ 42; Ex. H.) Petitioner was served with a Notice of Revocation of Release ("Notice") signed by "Officer C. Mendez SDDO". (Ex. G.) The Notice states that Petitioner's OSUP has been revoked pursuant to "changed circumstances in [his] case" and that he will be "expeditiously removed from the United States pursuant to the outstanding order of removal" from June 10, 2010. (Id.) The Notice also states that Petitioner "will promptly be afforded an informal interview at which [he] will be given the opportunity to respond to the reasons for revocation. (Id.) Further, the Notice states that Petitioner's "case is under current review by Russia and Armenia for the issuance of a travel document." (Id.) Petitioner claims ICE has "no particularized evidence that Petitioner could be deported to Russia or any country at the time

---

Accordingly, the Court interprets this ground for relief as a violation of the Administrative Procedures Act ("APA"). The APA provides that a reviewing court may hold "unlawful" any agency action that is "not in accordance with the law[,]" is "contrary to constitutional right" or "without observance of procedure required by law." 5 U.S.C. § 706.

they detained him and continue to have no particularized evidence that Petitioner can be removed at this time." (Application at 7.) Moreover, Petitioner has not violated the terms of his release. (Ex. F.)

While in detention, "ICE officials have repeatedly come to discuss travel documents with Petitioner, indicating that they did not take the steps necessary to make a plan for removal or secure travel documents prior to the time his OSUP was revoked." (Petition ¶ 45.) At the time of filing, Petitioner had yet to be provided with the aforementioned interview or any opportunity to respond to his revocation. (Petition ¶ 43; Robinson Decl. ¶ 26.)

Petitioner is married to a U.S. citizen and has a 6-year-old child who is also a U.S. citizen. (Ex. I.) Petitioner also has family who are U.S. citizens, including his mother, a sibling, and five nieces and nephews. (Id.)

### III. LEGAL STANDARD

A temporary restraining order ("TRO") may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 61(b)(1)(A). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

### IV. DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tips in their favor. Winter, 555 U.S. at 20. Likelihood of success on the merits "is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Because both parties have had an opportunity to file briefs, the Court construes the Application for a TRO as a motion for preliminary injunction. Synopsys, Inc. v. AzurEngine Techs., Inc., 401 F. Supp. 3d 1068, 1075 (S.D. Cal. 2019) ("Given this opportunity for briefing, the Court will instead construe [plaintiff's] request for a TRO as a motion for preliminary injunction.").

**A.     Likelihood of Success on the Merits**

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Petitioner argues that his detention violates his Fifth Amendment substantive and procedural due process rights. (Application at 7.) "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'" Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). Under 8 U.S.C. § 1231, the "post-removal-period detention statute," there are two permissible goals for post-removal detention: "preventing flight" and "protecting the community." Id. Because flight risk is attenuated where removal is not possible and indefinite detention on the basis of protecting the community is allowed under only limited circumstances, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. Otherwise, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Id. at 690.

Furthermore, the Supreme Court has separately recognized that an individual on parole, which is analogous to an order of supervision, has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees." Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrissey to probation revocation); Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole"). This liberty interest exists even though a revocation of parole arises outside of the protections of criminal proceedings. Morrissey, 408 U.S. at 480. "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." Gagnon, 411 U.S. at 781. Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed to parolees to a "preliminary hearing" to that guaranteed to welfare recipients prior to the termination of their benefits. Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)). Although the Due Process Clauses

of the Fifth and Fourteenth Amendments cannot always be read uniformly, see Fuld v. Palestine Liberation Org., 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens under orders of supervision.  See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Finally, it is well established that government agencies must comply with their own regulations.  Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.").  Here, the government has promulgated two regulations to govern orders of supervision.  ICE may only revoke an order of supervision if: "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8. C.F.R. § 241.4(l)(2).  ICE officials must provide an individual whom ICE decides to re-detain with a copy of the decision "with the reasons for the continued detention."  8 C.F.R. § 241.4(d).  Subsequently, ICE must provide the noncitizen "an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation."  8 C.F.R. § 241(l)(1).  Multiple courts have interpreted 8 C.F.R. § 241(l)(1) as requiring an informal interview when ICE revokes a noncitizen's order of supervision.  See Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (collecting cases); Grigorian v. Bondi, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) ("The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands.").

Following the Supreme Court's decision in Zadvydas v. Davis, ICE issued 8 C.F.R. § 241.13 to govern custody determinations for noncitizens subject to a final order of removal whose removal period has expired and where there is not a significant likelihood of removal.  Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001). ICE can only re-detain a noncitizen subject to 8 C.F.R. § 241.13 if the noncitizen has violated the conditions of his release or if ICE has determined "on account of changed circumstances . . . there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(1)-(2).  In the latter case, ICE must provide the noncitizen an "informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation."  8 C.F.R. § 241.13(i)(3).  Thus, if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l) and must similarly provide them an informal interview.

Thus, the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a right to be free from indefinite detention, a liberty interest to an informal hearing prior to revocation of his order of supervision, and a right to an informal interview under ICE's internal procedures.

The government has declined to respond to the Application. As such, on the basis of the Application, the Court determines that the government is no closer to removing Petitioner than it has for the last decade since Petitioner's order of removal was issued. (Application at 9–12.) Therefore, the government fails to demonstrate that removal is reasonably foreseeable sufficient to warrant a change in circumstances. (Id.) Furthermore, the government has failed to provide Petitioner an informal interview to contest his re-detention as required by regulation. (Id. at 12–13.) Thus, the Court finds that Petitioner has met his burden of showing that there is "no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under Mathews v. Eldridge, the Court considers three factors:[2] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, Courts have regularly described a petitioner's interest in remaining out of custody as "substantial." Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor increases as a party remains on bond for an extended period. Morrissey, 408 U.S. at 482. Here, Petitioner was previously released on an order of supervision in 2013. (Petition ¶ 27, Ex. E.) Thus, ICE released Petitioner on an order of supervision for more than a decade. (Id.) Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no process offered to Petitioner during his re-detention and no rationale provided for his re-detention except for the Notice of Revocation of Release, which states that "there are changed circumstances." (Ex. G.) This risk is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." Zadvydas, 533 U.S. at 690.

Furthermore, it is not clear that Supervisory Detention and Deportation Officer C. Mendez ("Mendez") holds the authority to revoke Petitioner's order of supervision. (Application at 13–14.) 8 C.F.R. § 241.4 provides the "Executive Associate Commissioner" the authority to revoke an individual's order of supervision. That authority now rests with the Executive Associate Director of ICE. See 8 C.F.R. § 1.2 ("Commissioner means . . . the Director of U.S. Immigration and Customs Enforcement"); see also Ceesay, 781 F. Supp. 3d at 160 (holding that the "Executive Association Commissioner" referenced in 8 C.F.R. § 241.4(l) now refers to the "Executive Associate Director of ICE"); Santamaria Orellana v. Baker, No. CV 25-1788-TDC, 2025 WL 2444087, at *4 (D. Md. Aug. 25, 2025) (same). As an alternative to the

---

[2] The Court follows the Ninth Circuit, which regularly employs Mathews v. Eldridge in the context of due process challenges in the immigration context. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

Executive Associate Director of ICE, a "district director" may revoke an order of supervision "when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2).  Mendez's title does not indicate that they are an Executive Associate Director of ICE or a district director.  Id.  Even assuming that Mendez is a district director, the Notice does not explain why revocation is in the public interest or why referral to the Executive Associate Director of ICE was not possible.  Id.  Accordingly, the Court finds that Petitioner faces a substantial risk of an erroneous deprivation of his liberty.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017).  Although the Ninth Circuit's holding arose in a challenge to a different statute governing immigration detention, 8 U.S.C. § 1226(a), the Court finds the Ninth Circuit's reasoning equally availing here.  The government's previous decision to release Petitioner on an OSUP demonstrates that the government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions."  Id.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

**B.      Irreparable harm**

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of his constitutional rights.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees."  Hernandez, 872 F.3d 976, 995 (9th Cir. 2017).  Therefore, Petitioner faces irreparable harm.

**C.      Balance of equities and public interest**

Where the government is the opposing party, the balancing of the equities and the public interest merge.  See Nken v. Holder, 556 U.S. 418, 435 (2009).  Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention."  Vargas v. Jennings, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).  And the government "cannot reasonably

assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." <u>Zepeda v. U.S. Immigr. & Nat. Serv.</u>, 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention and the resulting emotional harm. Therefore, the Court, like many courts across the country, finds that the only reasonable relief is Petitioner's release. <u>See</u> <u>Grigorian</u>, 2025 WL 2604573, at *10 (collecting cases).

Due to the minimal harm suffered by the government, the Court will not require security.

## V.  CONCLUSION

For the reasons described above, the Court **GRANTS** the Application. Accordingly, the Court finds Petitioner is entitled to a preliminary injunction and **ORDERS** the government to release Petitioner from its custody immediately.

**IT IS SO ORDERED.**